UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BRISTOL VILLAGE, INC., individually and on
behalf of a class of others similarly situated,

                              Plaintiff,

          v.                                                  **DECISION AND ORDER**
                                                              12-CV-263S

LOUISIANA-PACIFIC CORPORATION, and
ABT BUILDING PRODUCTS CORPORATION,

                              Defendants.

# I.  INTRODUCTION

Plaintiff Bristol Village, Inc. commenced this putative class action alleging, among other things, that Defendant Louisiana-Pacific Corporation[1] breached express and implied warranties with respect to its TrimBoard product. Presently before this Court is Defendant's Motion to Dismiss all causes of action except Plaintiff's breach of express warranty claim. The Court has reviewed the submissions and finds oral argument unnecessary.  For the reasons that follow, Defendant's motion is granted in part and denied in part.

# II.  BACKGROUND

Plaintiff is an assisted living facility located in Clarence Center, New York. (Am. Compl. ¶ 9.)  TrimBoard, a composite-wood trim product, was installed in Plaintiff's facility

---

[1]Plaintiff concedes that this Defendant is a wholly owned subsidiary of and indistinct from Defendant Louisiana-Pacific Corporation, (See Pl's Mem of Law in Opp'n at 2), therefore this decision will refer to the Defendant in the singular.

in November 2003. (Id. ¶¶ 9, 26, 64-65.)  TrimBoard is used:

> as fascia, a trim band running horizontally and situated vertically under the roof edge or forming the outer surface of a cornice; soffit, applied near the roof line of a structure; corner board, which functions as trim on the corners of a building; bandboard, which functions as a trim divider between floor levels on the exterior of a wall; and window trim and door trim/casing. Trim[B]oard is also marketed for use in other typical exterior applications.

(Id. ¶ 26.)  Plaintiff alleges that Defendant marketed TrimBoard "as a low-cost wood trim alternative that is actually superior to real wood trim." (Id. ¶¶ 28-29.)

Defendant warranted TrimBoard "exclusive of finish, against delamination, checking, splitting, cracking and chipping of the basic substrate for a period of ten years from the date of installation under normal conditions of use and exposure," and upon any failure within that time period, Defendant would "compensate the owner for repair and replacement of the affected trim no more than twice the original purchase price." (Am. Compl. Ex. A.)  TrimBoard also came with a five-year warranty on its primer "against peeling, blistering, or cracking" from the date of installation. (Id.)  The warranty included the following notice: "**THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.**" (Id. (emphasis in original))

Plaintiff commenced the instant action in this Court in 2012 against Defendant and ABT Building Products Corporation, alleging that the TrimBoard on Plaintiff's facility "is now rotting, swelling, cracking, and peeling." (Am. Compl. ¶ 67.)

> In particular, the fascia trim on Plaintiff's structure has exhibited significant swelling at butted joints.  The ends of boards in these types of installations are site-cut, but are not 'exposed' such that they require sealing and priming

– a fact that should be stated in installation instructions, but was not stated in Defendant's installation instructions. All fascia installed on Plaintiff's structure with butted joints has exhibited swelling. Fascia installed on Plaintiff's structure at butted-joints is also delaminating.

(Id. ¶ 68.).  Further, the TrimBoard installed around Plaintiff's windows and as other trim has also exhibited damage. (Id. ¶¶ 69-70.) Plaintiff alleges that, as a result of the defective TrimBoard, the structure of Plaintiff's facility sustained significant water damage and parts thereof are rotting. (Id. ¶ 73.)  Accordingly, Plaintiff asserted causes of action in its initial Complaint for: (1) breach of express warranty; (2) breach of implied warranty of merchantability; (3) negligence; (4) unjust enrichment; (5) violation of New York's Deceptive Trade Practices Law, General Business Law § 349 (a); (6) punitive damages; and (7) declaratory and injunctive relief. (Compl. ¶¶ 84-140, Docket No. 1.)

In lieu of answering, Defendant moved to dismiss the Complaint in April 2012. (Docket Nos. 12, 17 (motion and amended motion).)  Plaintiff filed an Amended Complaint on May 24, 2012. (Docket No. 24.)  The Amended Complaint eliminates ABT Building Products Corporation as a defendant, in recognition of the fact that this entity is a wholly owned subsidiary of and indistinct from Defendant Louisiana-Pacific Corporation. (See Pl's Mem of Law in Opp'n at 2.) No separate cause of action for punitive damages appears in the Amended Complaint, although Plaintiff still seeks such relief as a part of its requested damages. Defendant therafter moved to dismiss all causes of action in the Amended Complaint except for the breach of express warranty claim.[2]  (Docket No. 25.)

---

[2]In support of its motion, Defendant submits the Attorney Affidavit of Brian P. Crosby, Esq., with Exs. A-C, and a supporting Memorandum of Law (Docket No. 25).  Plaintiff responded with an opposing Memorandum of Law (Docket No. 29), and Defendant filed a reply memorandum in further support of its motion (Docket No. 31).

### III. DISCUSSION

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12 (b)(6), a court must accept all factual allegations in the complaint as true and make all reasonable inferences in a plaintiffs' favor.  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).  In order to survive such a motion, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); ATSI Commc'ns, Inc., 493 F.3d at 98. This assumption of truth applies only to factual allegations and is inapplicable to legal conclusions.  Iqbal, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Further, where a plaintiff timely amends his complaint as a matter of course while a motion to dismiss is pending, see Fed. R. Civ. P. 15 (a)(1)(B), a court may either deny the motion as moot or consider it in light of the amended pleading.  Roller Bearing Co. of America, Inc. v. American Software, Inc., 570 F. Supp. 2d 376, 384 (D.Conn. 2008).  Here, however, Plaintiff's Amended Complaint was filed more than 21 days after Defendant's Amended Motion to Dismiss was filed. Fed. R. Civ. P. 15 (a)(1)(B)(a party may file an amended pleading as of right within 21 days after service of either a responsive pleading or service of a motion under Rule 12 (b), (e), or (f)); see generally United States ex rel. Mathews v. HealthSouth Corp., 332 F.3d 293, 296 (5th Cir. 2003)("failure to obtain leave results in an amended [pleading] having no legal effect"); Gaumont v. Warner Bros.

Pictures, 2 F.R.D. 45, 46 (S.D.N.Y. 1941)(same); but see Little v. Nat'l Broad. Co., Inc., 210 F.Supp.2d 330, 372 (S.D.N.Y. 2002)(some courts have considered untimely amended pleadings if leave would have been granted and in the absence of prejudice to any party). Nonetheless, Defendant has also moved to dismiss this Amended Complaint and the parties have fully briefed the issues raised therein.  This Court will therefore construe Plaintiff's filing as a request for leave to file an Amended Complaint, and grant that request. Defendant's Amended Motion to Dismiss the Complaint is dismissed as moot. (Docket No. 17.) Accordingly, the Court will address the merits of Defendant's Motion to Dismiss the Amended Complaint.  (See Docket No. 25.)

## A.    Breach of Implied Warranty

Defendant contends that the second cause of action must be dismissed because: (1) Plaintiff lacked privity with Defendant, a necessary element of a breach of implied warranty claim; (2) any implied warranty was expressly disclaimed by Plaintiff; and (3) this claim is barred by the statute of limitations.

Initially, Defendant is correct that, under New York law,[3] "[a] claim based upon a breach of an implied warranty requires a showing of privity between the manufacturer and the plaintiff when there is no claim for personal injuries." Adirondack Combustion Tech., Inc. v. Unicontrol, Inc., 17 A.D.3d 825, 827, 793 N.Y.S.2d 576, 579 (N.Y.A.D. 3d Dep't. 2005) (citing Jaffee Assoc. v. Bilsco Auto Serv., 58 N.Y.2d 993, 995, 448 N.E.2d 792 (1983)); see Arthur Glick Leasing,Inc. v. William J. Petzold, Inc., 51 A.D.3d 1114, 1117, 858 N.Y.S.2d 405 (N.Y.A.D. 3d Dep't 2008), lv denied 11 N.Y.3d 708 (2008) (remote

---

[3]The parties do not dispute that New York law applies in this action where jurisdiction is based on the Class Action Fairness Act (28 U.S.C. § 1332(d)(2)).

purchaser barred as a matter of law from claiming economic damages due to alleged breach of implied warranties); Cereo v. Takigawa Kogyo Co., Ltd., 252 A.D.2d 963, 964, 676 N.Y.S.2d 364, 365-66 (N.Y.A.D. 4th Dep't 1998) (privity not required in a *personal injury action* for breach of express or implied warranty ) (citing U.C.C. § 2-318).  Thus, to the extent that Plaintiff contends that it is a third-party beneficiary to an implied warranty, privity is required because Plaintiff's Amended Complaint contains no allegation of personal injuries. See U.C.C. § 2-318 (seller's implied warranty extends to any natural person reasonably expected to use, consume or be affected by goods who is personally injured by the breach).

Plaintiff argues that it need not allege direct privity with Defendant because it was a third-party beneficiary to "the sales contract between the installers of the Trimboard and Defendant." (Pl's Mem of Law in Opp'n at 8.) A non-party may pursue contractual remedies "only if it is an intended, and not a mere incidental, beneficiary . . . and even then, even if not mentioned as a party to the contract, the parties' intent to benefit the third party must be apparent from the face of the contract." East Coast Athletic Club, Inc. v. Chicago Title Ins. Co., 39 A.D.3d 461, 463, 833 N.Y.S.2d 585, 588 (N.Y.A.D. 2d Dep't 2007) (internal quotation marks omitted). Further:

> Generally it has been held that the ordinary construction contract—i.e., one which does not expressly state that the intention of the contracting parties is to benefit a third party—does not give third parties who contract with the promisee the right to enforce the latter's contract with another. Such third parties are generally considered mere incidental beneficiaries.

Port Chester Elec. Const. Co. v. Atlas, 40 N.Y.2d 652, 655, 357 N.E.2d 983, 986 (1976); Bd. of Mgrs. of the Riverview at College Point Condominium III v. Schorr Brothers Dev. Corp., 182 A.D.2d 664, 665, 582 N.Y.S.2d 258 (N.Y.A.D. 2d Dep't 1992). Here, the

6

Amended Complaint contains only a general reference to a non-specified sales contract; indeed, it is unclear whether Plaintiff owned the subject structure at the time TrimBoard was installed in 2003 or acquired it at a later time. (See Am. Compl. ¶ 65 (alleging that the "TrimBoard on Plaintiff's structure was installed in November 2003" with no allegation as to when Plaintiff acquired or had the structure built).)  Instead, the factual assertions in the Amended Complaint imply, at best, the existence of an ordinary construction contract to which Plaintiff was an incidental beneficiary. There is therefore insufficient factual matter to state a claim that Plaintiff was a third-party beneficiary to a sales contract between Defendant and the unnamed contractor who installed TrimBoard.

Similarly, although "an undisclosed principal may sue on a contract made in its agent's name," there is nothing alleged in the Amended Complaint from which to conclude that, at the time the TrimBoard was purchased, Plaintiff had any control over or even any affiliation with the general contractor purchaser. Aymes v. Gateway Demolition Inc., 30 A.D.3d 196, 196-97, 817 N.Y.S.2d 233, 234 (N.Y.A.D. 1st Dep't 2006); see generally Pensee Assoc. v. Quon Indus., 241 A.D.2d 354, 359, 660 N.Y.S.2d 563, 566-67 (N.Y.A.D. 1st Dep't 1997) (agency relationship requires manifestation of one party's willingness to allow another to "act for it subject to the principal's control and within the limits of the authority thus conferred"); cf. Utica Observer Dispatch, Inc. v. Booth, 106 A.D.2d 863, 483 N.Y.S.2d 540 (N.Y.A.D. 4th Dep't 1984) (privity found where evidence in the record established contractor purchased product on behalf of owner).  Accordingly, contrary to Plaintiff's assertion (Pl's Mem in Opp'n at 10 n. 2), the Amended Complaint does not sufficiently allege that the TrimBoard was purchased by a contractor acting as its agent.

Moreover, Defendant is also correct that, even if Plaintiff had stated a claim for

breach of implied warranty, it would be barred by the statute of limitations.  The statute of limitations for such a cause of action against a manufacturer or distributor is four years and "accrues on the date the party charged tenders delivery of the product" N. Y. Cent. Mut. Fire Ins. Co. v. Glider Oil Co., Inc., 90 A.D.3d 1638, 1640, 936 N.Y.S.2d 815, 819 (N.Y.A.D. 4th Dep't 2011) (internal quotation marks omitted); see U.C.C. § 2-725 (1), (2); Orlando v. Novurania of America, Inc., 162 F.Supp.2d 220, 223 (S.D.N.Y. 2001) (where action involves the sale of goods, four year statute of limitations found in Uniform Commercial Code applies instead of six year statute of limitations found in N.Y. C.P.L.R. § 213); Heller v. U.S. Suzuki Motor Corp., 64 N.Y.2d 407, 411, 477 N.E.2d 434 (1985) (a cause of action against a manufacturer or distributor accrues on the date defendant tenders delivery of the product, not on the date that some third party sells it to plaintiff). In the instant case, the TrimBoard was necessarily tendered by Defendant in or prior to November 2003, when Plaintiff asserts it was installed. (Am. Compl. ¶ 65.)  Plaintiff did not commence this action until 2012, therefore the breach of implied warranty claim is untimely.

Plaintiff's argument that Defendant is equitably estopped from pleading a statute of limitations defense because of its alleged material misrepresentation regarding TrimBoard's inherent defects is without merit. (Pl's Mem of Law in Opp'n at 16-18.)  This same misrepresentation underlies Plaintiff's breach of express warranty and deceptive trade practice claims. (Am. Compl. ¶¶ 86-91, 126-133.) " '[E]quitable estoppel does not apply where the misrepresentation or act of concealment underlying the estoppel claim is the same act which forms the basis of [the] plaintiff's underlying substantive cause[s] of action' "  Robare v. Fortune Brands, Inc., 39 A.D.3d 1045, 1046, 833 N.Y.S.2d 753

(N.Y.A.D. 3d Dep't 2007), *lv denied* 9 N.Y.3d 810 (2007) (quoting <u>Kaufman v. Cohen</u>, 307 A.D.2d 113, 122, 760 N.Y.S.2d 157, 167 (N.Y.A.D. 1st Dep't 2003); <u>see</u> <u>Kosowsky v. Willard Mtn., Inc.</u>, 90 A.D.3d 1127, 1130-31, 934 N.Y.S.2d 545, 549 (3d Dep't 2011) (same).

In light of the above conclusions, this Court need not consider at this time whether Defendant's exclusion of implied warranties is unconscionable.

**B.    Negligence**

Defendant argues that Plaintiff's third cause of action, for negligence, is barred by New York's economic loss doctrine, and therefore must also be dismissed. (Def's Mem of Law at 18-20.)

> The economic loss doctrine provides that tort recovery in strict products liability and negligence against a manufacturer is not available to a downstream purchaser where the claimed losses flow from damage to the property that is the subject of the contract, and personal injury is not alleged or at issue. The rule is applicable to economic losses to the product itself as well as consequential damages resulting from the defect.

<u>Weiss v. Polymer Plastics Corp.</u>, 21 A.D.3d 1095, 1096, 802 N.Y.S.2d 174, 175 (N.Y.A.D. 2d Dep't 2005) (internal citations omitted); <u>see</u> <u>Bocre Leasing Corp. v. General Motors Corp. (Allison Gas Turbine Div.)</u>, 84 N.Y.2d 685, 694, 645 N.E.2d 1195, 1194 (1995). "In such cases the damaged party has lost part of its bargain and the parties are relegated to the contractual remedies they negotiated, including warranties governing the rights and obligations between manufacturers and suppliers of goods." <u>Syracuse Cablesystems, Inc. v. Niagara Mohawk Power Co.</u>, 173 A.D.2d 138, 142, 578 N.Y.S.2d 770, 772 (N.Y.A.D. 4th Dep't 1991).  In contrast, tort liability is "generally present" where personal injury and "other property damage" is at issue.  <u>Bocre Leasing Corp.</u>, 84 N.Y.2d at 692.

9

A court determining whether the economic loss doctrine applies "should consider the nature of the defect, the injury, the manner in which the injury occurred, and the damages sought." Hodgson, Russ, Andrews, Woods & Goodyear, LLP v. Isolatek Intern. Corp., 300 A.D.2d 1051, 1052, 752 N.Y.S.2d 767, 769 (N.Y.A.D. 4th Dep't 2002). Notably, recovery for damage caused to a unit or system by a defective component has been consistently barred by the economic loss rule, even where that defective component was manufactured by a third party. See, e.g., Trump Intern. Hotel & Tower v. Carrier Corp., 524 F.Supp.2d 302, 309, 312 (S.D.N.Y. 2007) (recovery for damage to absorption chiller barred by economic loss rule because chiller and allegedly defective safety switch were one integrated unit); Bocre Leasing Corp., 84 N.Y.2d at 687, 693 (property damage caused by defective jet engine to the helicopter itself and resulting lost profits constituted classic contractual economic damages); Atlas Air, Inc. v. General Elec. Co., 16 A.D.3d 444, 445, 791 N.Y.S.2d 620, 621 (N.Y.A.D. 2d Dep't 2005) (no recovery in tort for damage to entire plane as a result of defendant's defectively designed engine), lv denied 6 N.Y.3d 701 (2005). "Critical to a determination of whether a tort claim is barred by the economic loss doctrine is whether damages are sought for the failure of the product to perform its intended purpose, in which case recovery is barred by the economic loss doctrine, or for direct and consequential damages caused by a defective and unsafe product." Praxair, Inc. v. General Insulation Co., 611 F. Supp. 2d 318, 326 (W.D.N.Y. 2009) (citing Hodgson, Russ, Andrews, 300 A.D.2d at 1052-53).

Here, Plaintiff alleges that, in addition to the deterioration of the TrimBoard itself, the defective nature of the product "attracts moisture to the structure and its interior.  This causes the structure, including the structure's interior[,] to deteriorate." (Am. Compl. ¶ 37.)

10

Further, "Trim[B]oard's water absorption has also resulted in the growth of mold, mildew, and fungi, as well as infestations by termites and other insects."  (Am. Compl. ¶ 36.) At issue is whether the alleged damage to "the structure's interior" is a consequential loss flowing from the defective TrimBoard, recovery for which is barred by the economic loss rule, or whether this constitutes damage to "other property," for which recovery is permissible.

New York courts have already held that, in cases involving the failure of exterior building products to perform properly, the economic loss rule bars recovery for both the direct loss of the product itself as well as the consequential damages to the underlying structure. Weiss, 21 A.D.3d at 1096 (water damage to plywood substrate consequential damage of failure of exterior synthetic stucco insulation system to protect home); Hemming v. Certainteed Corp., 97 A.D.2d 976, 976, 468 N.Y.S.2d 789, 790 (N.Y.A.D. 4th Dep't 1983) (damages for direct loss of defective shingles, sheathing and nails, as well as consequential damage to home itself, barred by economic loss rule), *appeal dismissed* 61 NY2d 758 (1984).  Here, although Plaintiff makes the conclusory assertion that "[i]t would be a leap indeed to maintain that the interior of the house and a trim material are one system," (Pl's Mem of Law in Opp'n), there is no supporting argument explaining how the moisture damage to the interior is not a direct result of TrimBoard's failure to appropriately perform as part of the building's protective exterior.  Cf. Praxair, Inc., 611 F. Supp. 2d at 321, 327 (tort recovery permissible where plaintiff alleged insulation performed its intended function of maintaining temperature, but nonetheless caused extensive damage to piping system when chloride in the insulation combined with moisture and formed acid); Hodgson, Russ, 300 A.D.2d at 1052-53 (tort recovery permissible where mold caused by fireproofing

11

insulation was the result of water, rather than fire, the hazard against which the product was intended to protect).  In the absence of any allegation that would distinguish Plaintiff's present claim from those in <u>Weiss</u> and <u>Hemming</u>, it is concluded that the damage claimed relates to the expectations of the parties regarding the performance of TrimBoard, thus relegating these plaintiffs to contractual remedies such as warranty. <u>Hemming</u>,  97 A.D.2d at 976; <u>C.f Syracuse Cablesystems, Inc.</u>, 173 A.D.2d at 142 (claims did not relate to expectation of the parties where product performed as intended).

**C.      Unjust Enrichment**

Defendant contends that Plaintiff's unjust enrichment claim must be dismissed because: 1) the existence of a valid and enforceable contract, the express warranty, precludes recovery in quasi-contract; and 2) the relationship between the parties is too attenuated to support an unjust enrichment claim. (Def's Mem of Law at 11-13.)

A claim for unjust enrichment requires a showing that the defendant was enriched at the plaintiff's expense, and it would be against equity and good conscience to permit the defendant "to retain what is ought to be recovered." <u>Mandarin Trading Ltd. v. Wildenstein</u>, 16 N.Y.3d 173, 182, 944 N.E.2d 1104 (2011) (internal quotation marks omitted); <u>see Paraount Film Distrib. Corp. v. State of N.Y.</u>, 30 N.Y.2d 415, 421, 285 N.E.2d 695 (1972). Recovery under this quasi-contractual theory is precluded by the existence of a valid and enforceable written contract governing the particular subject matter. <u>Payday Advance Plus, Inc. v. Fidnwhat.com, Inc.</u>, 478 F.Supp.2d 496, 504 (S.D.N.Y. 2007); <u>Clark-Fitzpatrick, Inc. v. Long Island R. Co.</u>, 70 N.Y.2d 382, 388, 516 N.E.2d 190 (1987).

Initially, Plaintiff is correct that unjust enrichment may be pleaded in the alternative where there is a bona fide dispute whether a relevant contract exists or covers the dispute

at issue.   See Goldman v. Simon Prop. Group, Inc., 58 A.D.3d 208, 220, 869 N.Y.S.2d
125, 135 (N.Y.A.D. 2d Dep't 2008); (Pl's Mem of Law in Opp'n at 19-20).  Defendant,
however, has never disputed that an express warranty exists providing Plaintiff, as an
owner of TrimBoard, with a contractual remedy. (See Def's Mem of Law at 1 (seeking
dismissal of all causes of action except the breach of express warranty claim); Def's Reply
Mem of Law at 7, Docket No. 31.); Am. Compl. Ex. A (promising to compensate "the
owner" upon product's failure within warranty period).)   An unjust enrichment claim is
unavailable "where it simply duplicates, or replaces, a conventional contract or tort claim,"
and here there is no bona fide dispute about the existence of the express warranty, only
the validity of the limitation on the amount of recovery stated therein. Corsello v. Verizon
New York, Inc., 18 N.Y.3d 777, 790, 967 N.E.2d 1177 (2012) ("unjust enrichment is not a
catchall cause of action to be used when others fail").

Moreover, under New York law, although privity is not required, an unjust enrichment
claim cannot be sustained if the relationship between the parties is too attenuated.
Mandarin Trading Ltd., 16 N.Y.3d at 182; Sperry v. Crompton Corp.,  8 N.Y.3d 204,
215-16, 863 N.E.2d 1012 (2007).  Plaintiff concedes that it was not a direct purchaser of
TrimBoard from Defendant. (Pl's Mem of Law in Opp'n at 8 (arguing that it was a third-party
beneficiary to the "sales contract between the installers of the Trim[B]oard and
Defendant").)  A relationship is too attenuated where a plaintiff is an indirect purchaser of
an item as part of a larger product, and here Plaintiff acquired TrimBoard either as part of
its purchase of its structure or its contracting for construction services thereon.  Sperry, 8
N.Y.3d at 216 ("connection between the purchaser of tires and the producers of chemicals
used in the rubber-making process is simply too attenuated to support" unjust enrichment

claim); State of N.Y. v. Daicel Chem. Indus., Ltd., 42 A.D.3d 301, 303, 840 N.Y.S.2d 8 (N.Y.A.D. 1st Dep't 2007) (attenuated connection between manufacturer of food preservatives and end users of commercially sold food products containing these preservatives).   The unjust enrichment claim is therefore dismissed.

**D.      Deceptive Trade Practices, New York General Business Law § 349**

Plaintiff alleges that Defendant violated New York General Business Law § 349 (a), which makes unlawful "deceptive acts or practices in the conduct of any business, trade or commerce," by misrepresenting the quality of TrimBoard. (Am. Compl. ¶¶ 123-136.) "To state a claim under § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009); Stutman v. Chemical Bank, 95 N.Y.2d 24, 29, 731 N.E.2d 608 (2000).   Notably, of these elements, Defendant challenges only whether Plaintiff sufficiently alleged that Defendant's conduct was consumer-oriented.

Contrary to Defendant's argument, Plaintiff is not precluded from pursing a § 349 claim by the fact that it is a corporate entity.   Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25, 647 N.E.2d 741, 744 (1995) (either individuals or business entities may bring a claim pursuant to this section); Statler v. Dell, Inc., 775 F. Supp. 2d 474, 484 (E.D.N.Y. 2011) (Section 349 does not preclude businesses from acting as plaintiffs).   Nor is the fact that Plaintiff does not allege that it purchased TrimBoard directly from Defendant dispositive.   "It is not necessary that the plaintiff be a consumer or stand in the shoes of a consumer in order to bring a section 349 claim." Int'l Design Concepts, LLC v. Saks Inc., 486 F. Supp. 2d 229, 238 (S.D.N.Y. 2007) (citing

14

Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 264 (2d Cir. 1995)); City of N.Y. v. Smokes-Spirits.Com , Inc., 12 N.Y.3d 616, 624 n. 3, 911 N.E.2d 834 (2009) (noting prior holding that class of persons accorded standing under this section is not necessarily limited to consumers).  Although the attenuated relationship between Plaintiff and Defendant may affect Plaintiff's ability to establish that it was directly injured as a result of Defendant's alleged deceptive practices, Defendant's arguments in the present motion focus on consumer orientation.  See Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris USA Inc., 3 N.Y.3d 200, 207, 818 N.E.2d 1140 (2004) (recovery precluded under § 349 for indirect or derivative damages, i.e. where the loss arises solely as the result of injuries sustained by another party); Gale v. Int'l Business Machines Corp., 9 A.D.3d 446, 447, 781 N.Y.S.2d 45, 47 (N.Y.A.D. 2d Dep't 2004) (where plaintiff did not see any misleading statements regarding defective product prior to purchase thereof, no connection between deceptive act and plaintiff's injury).

"The consumer oriented prong of the Section 349 claim requires a plaintiff to show that the practices complained of have a 'broad impact on consumers at large; private contract disputes unique to the parties . . . would not fall within the ambit of the statute." Statler, 775 F. Supp. 2d at 483-84 (internal quotation marks omitted; citing New York Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 320, 662 N.E.2d 763 (1995)); see Oswego Laborers' Local 214 Pension Fund, 85 N.Y.2d at 26-27.  In light of the fact that this requirement is construed liberally so that the statute can be broadly applied, New York v. Feldman, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002), Plaintiff has sufficiently alleged that Defendant's conduct was consumer oriented.  Plaintiff states in its Amended Complaint that Defendant advertised TrimBoard as being more durable and easier to use than real

15

wood and competing products, despite knowing that the product was unable to resist moisture as intended, and distributed marketing materials that misled consumers into believing that TrimBoard could be used in "typical exterior application in which lumber would typically be used." (Am. Compl. ¶¶ 28-32, 58-63, 126-131.)  Notably, Plaintiff is not required to identify specific individual consumers who were harmed by Defendant's actions in order to establish a violation of this section.  North State Autobahn, Inc. v. Progressive Ins. Group Co., -- A.D.3d --, 953 N.Y.S.2d 96, 102-03 (N.Y.A.D. 2d Dep't 2012). Instead, Plaintiff's allegations are consumer-oriented "in the sense that they potentially affect similarly situated consumers" and "were not unique to these two parties, nor were they private in nature or a single shot transaction." Oswego Laborers' Local 214 Pension Fund, 85 N.Y.2d at 26-27 (internal quotation marks omitted); see Statler, 775 F. Supp. 2d at 484 (allegations of widespread sales of defective product with a uniform pattern of deceptive conduct sufficient to survive motion to dismiss).

Further, contrary to Defendant's assertion, Plaintiff's allegations do not establish that TrimBoard was marketed only to developers and contractors rather than individual homeowners.  (Am. Compl. ¶ 3 (alleging that Defendant sold TrimBoard to owners as well as contractors), ¶ 32 (representations made to induce contractors, builders, and consumers to purchase TrimBoard), ¶ 33 (TrimBoard sold to homeowners).)  Whether the evidence will ultimately support these allegations is a question for another day.  Cf. Fibermark, Inc. v. Brownville Specialty Paper Prods., 419 F. Supp. 2d 225, 240 (N.D.N.Y. 2005) (judgment as a matter of law granted dismissing § 349 claim where there was insufficient evidence that defendant sold to 'consumers at large,' meaning directly to the end-users of the product).

**E.      Plaintiff's Separate Cause of Action for Declaratory and Injunctive Relief**

Defendant correctly asserts, and Plaintiff does not dispute, that the sixth cause of action for declaratory and injunctive relief is duplicative of Plaintiff's other substantive claims and that this nominal cause of action must be dismissed. Flaherty v. Filardi, 388 F. Supp. 2d 274, 291 (S.D.N.Y. 2005).  "Declaratory judgments and injunctions are remedies, not causes of action." Chiste v. Hotels.com L.P., 756 F. Supp. 2d 382, 406-07 (S.D.N.Y. 2010).

Defendant's assertion that Plaintiff may not seek declaratory relief in this Rule 23 class action in light of the Supreme Court's decision in Wal-Mart Stores, Inc. v. Dukes is, however, without merit.  131 S. Ct. 2541, 2557, 180 L.Ed.2d 374 (2011).  In Dukes, the Court held that claims for backpay were improperly certified under Rule 23 (b)(2):

> Rule 23(b)(2) allows class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." One possible reading of this provision is that it applies *only* to requests for such injunctive or declaratory relief and does not authorize the class certification of monetary claims at all. We need not reach that broader question in this case, because we think that, at a minimum, claims for *individualized* relief (like the backpay at issue here) do not satisfy the Rule. The key to the (b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant. **Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages**.

Dukes, 131 S. Ct. at 2557 (final emphasis added, internal citation omitted).  Accordingly, the Court held that claims for monetary relief cannot be certified under this provision where

the monetary relief is not merely incidental to the injunctive or declaratory relief.  Id.

It has since been recognized that Dukes abrogates the approach to Rule 23(b)(2) class certification previously used in this Circuit; i.e. that certification of a combination Rule 23 (b)(2) class is permitted so long as the individualized monetary relief does not predominate over the requested injunctive relief. Stinson v. City of New York , 282 F.R.D. 360, 380 (S.D.N.Y. 2012); Jermyn v. Best Buy Stores, L.P., 276 F.R.D. 167, 173 (S.D.N.Y. 2011); U.S. v. City of N.Y., 276 F.R.D. 22, 31-33 (E.D.N.Y. 2011); see Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 164 (2d Cir. 2001).   The class in Dukes, however, was certified only pursuant to Rule 23 (b)(2). Dukes, 131 S. Ct. at 2548-49; see Jermyn, 276 F.R.D. at 173. In light of this, courts in this Circuit have since held that Dukes does not preclude certifying a class under Rule 23 (b)(2) and separately certifying a class under Rule 23 (b)(3) for non-trivial monetary damages. Jermyn, 276 F.R.D. at 173-74; Stinson, 282 F.R.D. at 381; see Nationwide Life Ins. Co. v. Haddock, 460 Fed. Appx. 26, 29 (2d Cir. 2012) (remanding for consideration of class certification under Rule 23 (b)(3) as well as (b)(2) where non-incidental, individualized monetary damages were sought along with injunctive relief).   In other words, Plaintiff may seek injunctive and declaratory relief in addition to monetary damages so long as this Court "engages in the analysis necessary under Rule 23(b)(2) and Rule 23(b)(3)" to certify both classes. Stinson, 282 F.R.D. at 381.

Here, Plaintiff's Amended Complaint contains allegations in support of the minimal requirements necessary to certify a class pursuant to Rule 23(b)(2), such as numerosity, commonality, typicality, and adequacy of representation, (see Rule 23(a)), as well as allegations in support of the "heightened requirements" of Rule 23 (b)(3), including

predominance and superiority. <u>Blyden v. Mancusi</u>, 186 F.3d 252, 269 (2d Cir. 1999). The Court finds consideration of whether Plaintiff has, in fact, established that certification of either class is warranted to be premature.[4] (Def's Mem of Law at 18-20.) "[A] decision about certification need not be made at the outset; a court should delay a certification ruling until information necessary to reach an informed decision is available." <u>Ruggles v. Wellpoint, Inc.</u>, 253 F.R.D. 61, 66-67 (N.D.N.Y. 2008); <u>see</u> <u>Winfield v. Citibank, N.A.</u>, 842 F. Supp. 2d 560, 573 (S.D.N.Y. 2012) (determinations regarding Rule 23 requirements are often more properly deferred to the class certification stage). Indeed, " 'in making a certification decision, a judge must look somewhere between the pleading[s] and the fruits of discovery.... [E]nough must be laid bare to let the judge survey the factual scene on a kind of sketchy relief map, leaving for later view the myriad of details that cover the terrain.' " <u>Philip Morris Inc. v. Nat'l Asbestos Workers Med. Fund</u>, 214 F.3d 132, 135 (2d Cir. 2000) (quoting <u>Sirota v. Solitron Devices, Inc.</u>, 673 F.2d 566, 571-72 (2d Cir. 1982)).

## F.    Punitive Damages

Defendant further contends that Plaintiff failed to plead sufficient facts to support an inference that Defendant acted with the level of malice necessary to warrant the imposition of punitive damages. (Def's Mem of Law at 17-18.) Initially, in light of the above conclusions, the remaining claims are for breach of express warranty and violation of General Business Law § 349. <u>See generally</u> <u>Kantrowitz v. Allstate Indem. Co.</u>, 48 A.D.3d

---

[4]Notably, several courts have already rejected Defendant's argument that the commonality requirement is defeated by the need to inquire into whether each putative plaintiff installed TrimBoard correctly. <u>See</u> <u>Brunson v. Louisiana-Pacific Corp.</u>, 266 F.R.D. 112, 119 (D.S.C. 2010) (commonality requirement met where, although some individual issues exist, common issue of whether TrimBoard is defective "is dispositive and overshadows any other issues"); <u>Thomas v. Louisiana-Pacific Corp.</u>, 246 F.R.D. 505, 516 (D.S.C. 2007)(noting that the plaintiff's theory was that TrimBoard is defective and unsuitable even where installed correctly).

753, 754, 853 N.Y.S.2d 151 (N.Y.A.D. 2d Dep't 2008) (a demand for punitive damages does not constitute a separate cause of action). Section 349 expressly allows for the recovery of limited punitive damages in connection with a successful claim.[5] See N.Y. General Business Law § 349 (h) (granting a court discretion to triple amount of damages up to one-thousand dollars); Karlin v. IVF America, Inc., 93 N.Y.2d 282, 291, 712 N.E.2d 662 (1999) (remedies available pursuant to section 349 include compensatory damages, limited punitive damages, and attorneys' fees).

Further, punitive damages for the breach of contractual obligations, such as express warranties, are generally unavailable unless necessary to vindicate a public right. TVT Records v. Island Def Jam Music Group, 412 F.3d 82, 94 (2d Cir. 2005), *cert denied*, 548 U.S. 904 (2006); Carvel Corp. v. Noonan, 350 F.3d 6, 24 (2d Cir. 2003); see Mayline Enters., Inc. v. Milea Truck Sales Corp., 641 F. Supp. 2d 304, 311, 313 (S.D.N.Y. 2009) (the standard for applying punitive damages in a breach of warranty claim is the same applied in a breach of contract claim). Punitive damages are recoverable in contract claims where the breach involved particularly egregious fraud aimed at the public generally. TVT Records, 412 F.3d at 94 (citing Rocanova v. Equitable Life Assurance Society of the U.S., 83 N.Y.2d 603, 621, 634 N.E.2d 940 (1994)).   To establish the right to such damages in connection with the contractual claim, Plaintiff is required to show, among other things, that Defendant's conduct is actionable as an independent tort. New York Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 316, 662 N.E.2d 763 (1995). Plaintiff failed to state a claim of

---

[5]Although N.Y. C.P.L.R. 901 (b) prohibits class action relief for a statutorily-imposed penalties or minimum damages, the Supreme Court held in Shady Grove Orthopedic Assocs. v. Allstate Ins. Co. that the certification requirements of Rule 23 preempted this state law 'procedural' limitation in federal actions. 130 S. Ct. 1431, 1438-40, 176 L.Ed.2d 311 (2010).

egregious tortious conduct; therefore any claim for punitive damages not authorized by Section 349 must be dismissed. <u>See</u> <u>Greenspan v. Allstate ins. Co.</u>, 937 F.Supp. 288, 295 (S.D.N.Y. 1996) (demand for punitive damages struck where plaintiffs had no remaining tort claim); <u>Flores-King v. Encompass Ins. Co.</u>, 29 A.D.3d 627, 818 N.Y.S.2d 221 (N.Y.A.D. 2d Dep't 2006) (to state a claim for punitive damages for breach of an insurance contract, complaint needed to first allege a claim of egregious tortious conduct directed at the insured).

## IV.  CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss the Amended Complaint is granted in part and denied in part.  Plaintiff's second, third, and fourth causes of action are dismissed for the failure to state a claim.  Plaintiff's nominal sixth cause of action is dismissed because declaratory judgments and injunctions are remedies, not causes of action.  Finally, any claim for punitive damages not authorized by Section 349 is dismissed.

## V. ORDERS

IT HEREBY IS ORDERED that Plaintiff's untimely Amended Complaint (Docket No. 24) is construed as a request for leave to file the same, and that request is GRANTED;

FURTHER, that Defendant's Amended Motion to Dismiss the Complaint (Docket No. 17) is DISMISSED as moot;

FURTHER, in light of the parties' agreement, nominal Defendant ABT Building

Products Corporation is dismissed from the action;

FURTHER, that Defendant's Motion to Dismiss the Amended Complaint (Docket No. 25) is GRANTED in part and DENIED in part in conformance with the above decision.

SO ORDERED.

Dated: December 31, 2012
          Buffalo, New York


                                              /s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                                    Chief Judge
                                            United States District Judge