UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

BRISTOL VILLAGE, INC.,

                    Plaintiff,

          v.

LOUISIANA-PACIFIC CORPORATION,

                    Defendant.

———————————————————————

LOUISIANA-PACIFIC CORPORATION,

                    Third-Party Plaintiff,

          v.

CHARLES TRUMP, JR. d/b/a
NORTHERN ROOFING a/k/a
NORTHERN ROOFING & CONSTRUCTION,
and JOHN DOES 1 – 10,

                    Third-Party Defendants.

———————————————————————

**DECISION AND ORDER**

1:12-CV-263 EAW

## **INTRODUCTION**

Plaintiff Bristol Village, Inc. ("Bristol" or "Plaintiff") brought this action against defendant Louisiana-Pacific Corporation ("LPC"), concerning a dispute that a product called "TrimBoard" did not function properly on Plaintiff's property. LPC previously manufactured TrimBoard, which is a hardboard product sold for use as exterior trim. (Dkt. 77-1 at ¶ 1; Dkt. 99 at ¶ 1). Presently before the Court is LPC's motion for summary judgment directed to Plaintiff's claims for breach of express warranty and

violation of New York's General Business Law § 349.  (Dkt. 77).  For the following reasons, LPC's motion for summary judgment is granted in part and denied in part.

## BACKGROUND

On September 12, 2002, Plaintiff contracted with Purcell Construction ("Purcell") to serve as the general contractor on a construction project to build an assisted living facility in Clarence Center, New York, called Bristol Village.  (Dkt. 77-1 at ¶ 3; Dkt. 99 at ¶ 3).  Thereafter, on March 3, 2003, Purcell entered into a subcontract with Northern Roofing & Construction ("Northern") for the installation of siding, board trim and accessories, and metal flashings, at Bristol Village.  (Dkt. 77-1 at ¶ 4; Dkt. 99 at ¶ 4). The TrimBoard installed at Bristol Village was not sold directly to Plaintiff.  (Dkt. 77-1 at ¶ 6; Dkt. 99 at ¶ 6).  Rather, the TrimBoard was purchased in November 2003 by either Purcell or Northern.  (Dkt. 77-1 at ¶¶ 5, 10; Dkt. 99 at ¶¶ 5, 10).

Plaintiff contends that prior to its selection of the TrimBoard product, Cannon Design ("Cannon"), its architect, provided it with LPC marketing material, which represented that TrimBoard was suitable for use where any nonstructural trim lumber is required, and made representations relating to its durability and suitability for use as an exterior trim product.  (Dkt. 77-5, Ex. 6 at 136:16-17; 189:2-18; 189:20-190:3).  Plaintiff contends that it relied on these representations, and that the Bristol Village Board of Directors selected the TrimBoard product to be used in construction of the facility.  (*Id.* at 44:12-17; 21:16-22:9).  It is undisputed that Plaintiff considered alternatives before selecting the TrimBoard product.  (Dkt. 77-1 at ¶ 9; Dkt. 99 at ¶ 9).

Construction on the Bristol Village facility was completed and the certificate of occupancy was issued in 2003. (Dkt. 77-1 at ¶¶ 11-12; Dkt. 99 at ¶¶ 11-12). The facility was in use in 2003. (Dkt. 77-1 at ¶ 13; Dkt. 99 at ¶ 13).

The TrimBoard came with a warranty that stated, in relevant part, as follows:

Louisiana-Pacific Corporation (LP) warrants its TrimBoard . . . *for a period of ten years from the date of installation under normal conditions of use and exposure, providing the trim is properly stored, installed, maintained, and protected as specified in LP's Application Instructions.* Should the product fail within ten years of the date of installation, LP . . . *will compensate the owner for repair and replacement of the affected trim no more than twice the original purchase price of the affected trim if failure occurs within ten years.*

\*\*\*

NOTICE: THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

\*\*\*

*LP's liability shall be limited to the remedies set forth above and LP shall not be liable for any other damages or losses, including but not limited to incidental and consequential damages.* The remedies set forth above are the purchaser's exclusive remedies.

(Dkt. 77-7 at 71) (emphasis added).

Plaintiff contends that it discovered deteriorating TrimBoard during a Department of Health inspection in 2009 (Dkt. 77-5, Ex. 5 at 30:11-21), and discovered further deterioration several months following the inspection (*id.* at 39:20-40:14). Plaintiff contends that Michael Helbringer, the President of Bristol Village, first discussed the deterioration with Cannon, Purcell, and Bristol Village's Board of Directors. (Dkt. 77-5, Ex. 6 at 94:21-95:7).

In May 2011, Plaintiff submitted a warranty claim to LPC. (Dkt. 77-1 at ¶ 18; Dkt. 99 at ¶ 18). LPC contends that it investigated the claim and identified both compensable and non-compensable damages. (Dkt. 77-6 at ¶¶ 6-9). Specifically, LPC contends that its investigator, Vernon Tilley, determined the total number of linear feet of each TrimBoard width that had sustained compensable damages, multiplied the total number of linear feet for each width by two times the then-current price of trim per linear foot, and added those figures to arrive at a total amount of $7,200.84. (*Id.* at ¶ 10). LPC contends that the non-compensable portions of the TrimBoard included portions that were incorrectly installed by Plaintiff's contractor, and correct installation was required for coverage under the warranty. (*Id.* at ¶¶ 9, 11). LPC offered to compensate Plaintiff in the amount of $7,200.84 for the TrimBoard, purportedly in accordance with the terms of the warranty. (Dkt. 77-1 at ¶ 20; Dkt. 99 at ¶ 20).

In support of its assertion that the TrimBoard was incorrectly installed, LPC contends that Plaintiff never determined if Northern installed the TrimBoard in compliance with the TrimBoard installation instructions, or if the TrimBoard was installed in accordance with the required building code. (Dkt. 77-5, Ex. 5 at 64:3-14; Dkt. 77-5, Ex. 6 at 53:7-20; 78:15-22; 100:16-23; 109:11-17; 113:17-23). Further, LPC contends that Bristol's facilities director, Krieg Larson, testified that at least part of the reason the TrimBoard failed was because it was improperly installed and maintained. (Dkt. 77-5, Ex. 5 at 82:8-15). In response, Plaintiff contends that Mr. Larson testified that the TrimBoard was rotting, regardless of whether it was installed properly. (*Id.* at 82:16-22).

Plaintiff maintains that the TrimBoard installation instructions are misleading, incomplete, and in one instance, contrary to good construction practices. (Dkt. 98-6 at 16-17). Plaintiff further asserts that the instructions do not address what should be done to TrimBoard's ends, and that TrimBoard swells excessively and irreversibly, and rots even where it is installed in accordance with the installation instructions. (*Id.*). Finally, Plaintiff contends that LPC failed to conduct adequate testing to determine the long-term performance of TrimBoard and failed to take steps to improve product performance. (Dkt. 98-5 at 14-15).

Plaintiff rejected LPC's $7,200.84 offer because it believed the offer was not adequate, due to the significant deterioration of the TrimBoard and the resulting damages to other portions of the building. (Dkt. 77-7, Ex. 6 at 131:4-15). Plaintiff contends that the estimated cost of removal and replacement of the TrimBoard is $275,600, and it previously spent $5,000 in order to patch TrimBoard that had deteriorated. (Dkt. 99 at ¶¶ 20-21). Plaintiff also contends that TrimBoard's failure caused damages to the underlying wall components of Bristol Village, including the oriented strand board wall sheathing. (*Id.* at ¶ 33). Plaintiff currently seeks "hundreds of thousands of dollars" in damages, and alleges that damages to the putative class of similarly situated purchasers of the TrimBoard are in excess of $5,000,000. (Dkt. 77-1 at ¶¶ 22-23; Dkt. 99 at ¶¶ 22-23).

## PROCEDURAL HISTORY

Plaintiff filed its complaint on March 30, 2012, against LPC and ABT Building Products Corporation ("ABT"). (Dkt. 1). The complaint was filed as a putative class

action,[1] and alleged that LPC marketed and sold a product called "TrimBoard" which purported to be a "low-maintenance, superior to real wood trim, and more durable than competing products." (*Id.* at ¶ 2). TrimBoard is typically installed on structures at the fascia, base of the wall, near the roof line, building corners, and around windows and doors. (*Id.* at ¶ 29). Plaintiff alleged that TrimBoard, which was sold to various owners, developers, and contractors across the country, "prematurely deteriorates, rots, and decays, resulting in significant damage to homeowners and other consumers, including Plaintiff." (*Id.* at ¶ 2). Plaintiff's claims included breach of express warranty, breach of warranty of merchantability, negligence, and unjust enrichment. (*Id.* at 19-24). Plaintiff also alleged violation of the New York Deceptive Trade Practices Law, N.Y. Gen. Bus. Law § 349(a) ("GBL § 349"). (*Id.* at 25-26).

Defendants LPC and ABT filed a motion to dismiss on April 26, 2012 (Dkt. 12), and the motion was amended on April 30, 2012 (Dkt. 17). Plaintiff filed an amended complaint on April 24, 2012 (Dkt. 24), withdrawing its cause of action for punitive damages and eliminating ABT as a defendant, as it is a wholly-owned subsidiary of LPC (Dkt. 24 at ¶ 10; Dkt. 37 at 3). LPC thereafter filed another motion to dismiss on June 7, 2012, seeking to dismiss all claims against it, except for the breach of express warranty claim. (Dkt. 25). On January 3, 2013, the District Judge then assigned to the case, the

---

[1]     Bristol has not moved to certify the class. On August 3, 2012, by consent of the parties, the Court found good cause to temporarily suspend L. R. Civ. P. 23(d), which requires the party seeking class certification to file a certification motion on or before the deadline established in the scheduling order. (Dkt. 32, 33, 35, 36). On July 24, 2013, at a proceeding before the Hon. Leslie G. Foschio, United States Magistrate Judge, the parties were directed to continue discovery relevant to class certification. (Dkt. 58).

Hon. William M. Skretny, granted in part and denied in part LPC's motion to dismiss. (Dkt. 37). Judge Skretny determined that Plaintiff's claims for breach of warranty of merchantability, negligence, and unjust enrichment, failed to state a claim. (*Id.* at 21). Thus, the only remaining claims were Plaintiff's GBL § 349 and breach of express warranty causes of action. LPC filed its answer to the amended complaint on January 27, 2013. (Dkt. 40). The case was referred to Magistrate Judge Foschio for discovery and non-dispositive matters. (Dkt. 41).

On November 26, 2013, LPC moved for leave to file a third-party complaint (Dkt. 60), and its motion was granted (Dkt. 70). LPC filed its third-party complaint on May 14, 2014, against Charles Trump, Jr., d/b/a Northern, and John Does 1-10, alleging common law indemnity and contribution. (Dkt. 71). LPC alleges that Northern was hired as a subcontractor on the Bristol Village construction project and installed the TrimBoard. (*Id.* at ¶¶ 9-12). On July 21, 2014, LPC filed a request for a clerk's entry of default against Northern. (Dkt. 75). The parties thereafter stipulated to vacate the request for default. (Dkt. 80, 86). On September 8, 2014, Northern filed an answer to LPC's third-party complaint. (Dkt. 88).

On July 21, 2014, LPC filed the instant motion for summary judgment. (Dkt. 77). LPC filed a supplemental brief on November 3, 2014. (Dkt. 94). Plaintiff responded on November 14, 2014 (Dkt. 97),[2] and LPC replied on January 12, 2015 (Dkt. 106). The case was transferred to the undersigned on January 27, 2015. (Dkt. 108). Plaintiff filed a sur-reply on February 19, 2015 (Dkt. 115), and LPC filed another supplemental brief on

---

[2]   Bristol filed Exhibits 98-1, 98-2, 98-3, 98-4, 98-9, 98-10, and 98-11 under seal.

February 19, 2015 (Dkt. 114).   The Court held oral argument on March 12, 2015, and reserved decision.    (Dkt. 116).    On March 24, 2015, Plaintiff filed a notice of supplemental authority (Dkt. 117), and LPC responded on March 31, 2015 (Dkt. 118). Plaintiff filed a reply on April 10, 2015.  (Dkt. 119).

## DISCUSSION

### I.    Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).   Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'"  *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec.*, 475 U.S. at 586-87) (emphasis in original).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. . . ."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

## II.    Plaintiff's GBL § 349 Claim

LPC argues that it is entitled to summary judgment on Plaintiff's GBL § 349 claim because: (1) it is time-barred by the three-year statute of limitations; (2) it is duplicative of Plaintiff's warranty claim; (3) it is barred by the economic loss rule; (4) Plaintiff lacks standing to sue under the statute; (5) LPC's conduct is not "consumer oriented"; and (6) Plaintiff cannot pursue class claims under the statute on behalf of out-of-state parties.[3] (Dkt. 77-9 at 7-18). Plaintiff's GBL § 349 claim is dismissed because it is barred by the three-year statute of limitations; accordingly, the Court need not address LPC's remaining arguments.

GBL § 349(a) states that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." *See* N.Y. Gen. Bus. Law § 349(a). "'A plaintiff [suing] under section 349 must prove three elements: first that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act[.]'" *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 257 (E.D.N.Y. 2014) (quoting *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 27 (2000)) (alteration in original); *see also Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009). In contrast to common-law fraud, GBL § 349 "is a creature

---

[3]    Plaintiff concedes in its reply that it cannot pursue class claims under GBL § 349(a) on behalf of out-of-state parties. (*See* Dkt. 97 at 18). It is well-settled that GBL § 349 requires that the alleged deceptive conduct occur in New York, and "non-New York plaintiffs cannot allege that they were deceived in New York." *Kaufman v. Sirius XM Radio, Inc.*, 474 F. App'x 5, 8 (2d Cir. 2012) (internal quotations and citations omitted); *see also Morrissey v. Nextel Partners*, 72 A.D.3d 209, 216 (3d Dep't 2010).

of statute based on broad consumer-protection concerns. . . ." *Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 209 (2001) (internal quotations and citation omitted).

Claims brought pursuant to GBL § 349 are subject to a three-year statute of limitations. *Id.* at 208. The accrual of a GBL claim begins to run at the time of the plaintiff's injury, or "when all of the factual circumstances necessary to establish a right of action have occurred, so that plaintiff would be entitled to relief." *Gristede's Foods, Inc., v. Unkechauge Nation*, 532 F. Supp. 2d 439, 453 (E.D.N.Y. 2007) (internal quotations and citation omitted). The "date of discovery rule is not applicable and cannot serve to extend that limitations period." *Wender v. Gilberg Agency*, 276 A.D.2d 311, 312 (1st Dep't 2000). LPC contends that the three-year statute of limitations began to run when the TrimBoard was purchased and installed in 2003. (Dkt. 77-9 at 8). Plaintiff argues that (1) LPC is estopped from asserting the statute of limitations as an affirmative defense, and (2) even if LPC was not estopped from asserting a statute of limitations defense, Plaintiff's GBL § 349 claim is not time barred because the injury did not occur until 2011, when Plaintiff submitted its warranty claim. (Dkt. 97 at 7-10).

### A. Estoppel

"Under New York law, the doctrines of equitable tolling or equitable estoppel 'may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.'" *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (quoting *Doe v. Holy See*, 17 A.D.3d 793, 794 (3d Dep't 2005)). The elements of estoppel are material misrepresentation, reasonable reliance, and provable damages. *Lee v. Burkart*, 991 F.2d 1004, 1009 (2d Cir. 1993).

- 10 -

Further, "due diligence on the part of the plaintiff in bringing his action is an essential element for the applicability of the doctrine of equitable estoppel, to be demonstrated by the plaintiff when he seeks the shelter of the doctrine." *Simcuski v. Saeli*, 44 N.Y.2d 442, 450 (1978). "The justification for estoppel need not be proven by documentation, but the party asserting applicability of the doctrine must do more than show some metaphysical doubt exists regarding the material facts." *Bennett v. U.S. Lines*, 64 F.3d 62, 65 (2d Cir. 1995) (internal quotations and citations omitted).

Plaintiff previously raised an equitable estoppel argument in its response to Defendant's motion to dismiss the breach of implied warranty claim on statute of limitations grounds. Judge Skretny was not persuaded, finding:

> Plaintiff's argument that Defendant is equitably estopped from pleading a statute of limitations defense because of its alleged material misrepresentation regarding TrimBoard's inherent defects is without merit. (Pl's Mem of Law in Opp'n at 16-18.)   This same misrepresentation underlies Plaintiff's breach of express warranty and deceptive trade practice claims.   (Am. Compl. ¶¶ 86-91, 126-133.)   "'[E]quitable estoppel does not apply where the misrepresentation or act of concealment underlying the estoppel claim is the same act which forms the basis of [the] plaintiff's underlying substantive cause[s] of action'" *Robare v. Fortune Brands, Inc.*, 39 A.D.3d 1045, 1046, 833 N.Y.S.2d 753 (N.Y.A.D. 3d Dep't 2007), *lv denied* 9 N.Y.3d 810 (2007) (quoting *Kaufman v. Cohen*, 307 A.D.2d 113, 122, 760 N.Y.S.2d 157, 167 (N.Y.A.D. 1st Dep't 2003); *see Kosowsky v. Willard Mtn., Inc.*, 90 A.D.3d 1127, 1130-31, 934 N.Y.S.2d 545, 549 (3d Dep't 2011) (same).

(Dkt. 37 at 8-9).   In addition, as explained by the Second Circuit Court of Appeals:

> [A] plaintiff may not rely on the same act that forms the basis for the claim - the later fraudulent misrepresentation must be for the purpose of concealing the former [act giving rise to the claim].   The uncommon remedy of equitable estoppel is triggered by some conduct on the part of the defendant after the initial wrongdoing; mere silence or failure to disclose the wrongdoing is insufficient.

*Bisson v. Martin Luther King Jr. Health Clinic*, 399 F. App'x 655, 656 (2d Cir. 2010) (internal quotations and citation omitted).  Here, "Plaintiff does what the Second Circuit has held is impermissible. . . ." *Laydon v. Mizuho Bank, Ltd.*, No. 12 Civ. 3419 (GBD), 2015 U.S. Dist. LEXIS 44126, at *25 (S.D.N.Y. Mar. 31, 2015).  Plaintiff argues that LPC is estopped from asserting a statute of limitations defense due to TrimBoard's inherent defects.  (Dkt. 97 at 7-8).  However, this same alleged misrepresentation concerning TrimBoard's inherent defects underlies Plaintiff's GBL § 349(a) claim.  (Dkt. 24 at ¶¶ 126-134).  Accordingly, Plaintiff's equitable estoppel argument cannot stand.

## B.     Time of Accrual

Plaintiff argues that its GBL § 349 claim did not accrue until 2011, when it first discovered the TrimBoard deterioration.  Plaintiff's position that injury did not occur until it discovered the alleged deterioration is not supported by New York law.

### 1.     Accrual Occurs Upon Delivery of Defective Product

In *Plotkin Family Amagansett Trust v. Amagansett Bldg. Materials, Inc.*, No. 102296/10, 2012 N.Y. Misc. LEXIS 3496 (N.Y. Sup. Ct., July 20, 2012), the plaintiff sued the defendant pursuant to GBL § 349, for delivery of defective lumber. *Id.* at *3-4. Plaintiff received the lumber in 2005, but did not notice rotting until 2006 or 2007. *Id.* In 2010, the plaintiff commenced its action. *Id.* at *4-5.  The court dismissed the GBL § 349 claim on statute of limitations grounds, noting that "[i]n the present case, plaintiff was injured at the time it received and paid for the defective lumber, and thus, the cause of action accrued with tender of delivery," and any "subsequent expenditures to correct

the injury simply increased its damages." *Id.* at *16; *see also Brady v. Lynes*, No. 05 Civ. 5640 (DAB), 2008 U.S. Dist. LEXIS 43512, at *31 (S.D.N.Y. June 2, 2008) (cause of action under GBL § 349 accrued when plaintiff purchased forged watercolor painting).

Similarly, in *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451 (S.D.N.Y. 2014), the court found that the plaintiffs' injury occurred under GBL § 349 upon receipt of the defective product; specifically, a defective brake system. The court explained that because "Defendant's misrepresentations or omissions were about the nature of the product itself," and the defect existed at the time the plaintiffs purchased their vehicles, the statute of limitations accrued at the time the vehicles were purchased, and "Plaintiffs [could not] claim that their injury occurred only when the brakes failed when they had to pay for repairs on the faulty brakes." *Id.* at 461-62; *see also Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 484 (E.D.N.Y. 2011) (GBL § 349 claim was time-barred because "accrual occurs when [p]laintiff first suffered injury" and "the allegedly faulty capacitors were present in the computers purchased at the time of delivery . . . ."); *M & T Mortgage Corp. v. Miller*, No. 02 CV 5410 (NG)(MDG), 2009 U.S. Dist. LEXIS 106716, at *7-8 (E.D.N.Y. Nov. 13, 2009) (because "plaintiffs' injuries occurred . . . the day on which they closed on 1230 Troy Ave., . . . more than three years elapsed after the date on which plaintiffs were injured . . . before they filed suit. . . .").

Here, Plaintiff's own experts have offered evidence that the TrimBoard was inherently defective because it was manufactured in such a way that water becomes trapped inside the product and causes it to swell. (*See* Dkt. 98-5 at 14-16; Dkt. 98-6 at 16-17). In other words, the TrimBoard was defective when it was purchased, delivered,

and installed in 2003, and Plaintiff was injured at that time. Accordingly, Plaintiff's GBL § 349 claim expired sometime in 2006, well before Plaintiff filed its complaint on March 30, 2012.

### 2. GBL § 349 Claim Based on Warranty Claim Process

In an effort to circumvent the statute of limitations, Plaintiff argues that it is the purported deceptive denial of its warranty claim that occurred in July 2011, that constitutes the GBL § 349 violation. (Dkt. 97 at 8-9). In other words, according to Plaintiff's logic, it was not until July 2011, when its warranty claim was denied, that its GBL § 349 claim accrued. Plaintiff's creative efforts to avoid the statute of limitations through this argument fail.

First, a plain reading of Plaintiff's GBL § 349 cause of action reveals that Plaintiff is seeking relief for the initial sale of the TrimBoard in 2003, not the processing of Plaintiff's warranty claim in 2011. (Dkt. 24 at 26-28). There is absolutely nothing in Plaintiff's complaint suggesting that its GBL § 349 claim is based on the processing of its warranty claim in 2011, as opposed to the supplying of the TrimBoard in 2003. (*See, e.g., id.* at ¶ 126 ("Defendant made misrepresentations about its Trimboard, stating that it was superior to real wood trim, 'more durable' and 'easier to use' than competing products, when in fact it is not durable, difficult to use and unlike real wood trim."). At best, Plaintiff alleges that the purported deceptive conduct included misrepresenting the extent of the warranty when the product was sold in 2003, not any misrepresentations in connection with processing the warranty claim in 2011. (*Id.* at ¶ 129 ("Defendant also warranted that it would pay the costs of repair for any Trimboard that delaminated,

checked, split, cracked or chipped, over a period of ten years, which warranty it has failed to honor."). Plaintiff's opposition to the summary judgment motion is not the time to raise new claims or theories of liability by changing its GBL § 349 claim to be based on the warranty claim process in 2011 as opposed to the supplying of the defective TrimBoard in 2003. *See, e.g., Casseus v. Verizon, N.Y., Inc.*, 722 F. Supp. 2d 326, 344 (E.D.N.Y. 2010).

Second, there is no evidence in the record that any so-called deception or materially misleading conduct occurred during the warranty claims process; rather, the evidence shows that LPC followed its warranty claims process. LPC has submitted voluminous exhibits, including affidavits from warranty claims analysts and inspection reports, which reveal that LPC promptly responded to Plaintiff's claim, performed a detailed inspection of the property, and made an offer of twice the purchase price of any damaged TrimBoard that it determined was covered by the warranty. (Dkt. 77-6; Dkt. 77-7; Dkt. 77-8). The parties disagree as to whether Plaintiff complied with the instructions for installation of the TrimBoard and what should be covered under the warranty, but that disagreement does not rise to the level of a deceptive practice as required to pursue a claim under GBL § 349.

Finally, even if Plaintiff had evidence that LPC engaged in deception during the warranty claims process, any such claim would fail because any harm experienced by Plaintiff during the warranty claims process was individual and not an injury to the public at large, as required to pursue a GBL § 349 claim. The dealings between Plaintiff and LPC concerning the denial of the warranty claim reflect a private contract dispute and are

unique to Plaintiff's specific warranty claim. Indeed, the denial of Plaintiff's warranty claim, at least in part, was based upon the alleged failure to comply with the instructions for installation of the TrimBoard. This is an individual claim that Plaintiff possesses, as distinguished from the claims related to the initial allegedly deceptive conduct of marketing and selling TrimBoard to consumers at large, knowing that the product was purportedly defective.

"Typically, private contract disputes cannot form the basis of a § 349 claim. A plaintiff 'must demonstrate that the acts or practices have a broader impact on consumers at large. Private contract disputes, unique to the parties, for example, would not fall within the ambit of the statute.'" *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 143 (2d Cir. 2014) (internal quotations and citations omitted). *See also Polidoro v. Chubb Corp.*, 354 F. Supp. 2d 349, 353-54 (S.D.N.Y. 2005) (allegations that workers' compensation insurance carrier breached insurance contract by failing to provide physical therapy to insured alleged injury that was individual to insured, not to the general public as required to state a GBL § 349 claim); *Canario v. Gunn*, 300 A.D.2d 332, 333 (2d Dep't 2002) (where misrepresentation had potential to affect single real estate transaction it was not consumer oriented and did not have a broader impact on consumers at large, so as to sustain a claim under GBL § 349). Accordingly, even if Plaintiff had based its GBL § 349 claim on the warranty claim process, and even if Plaintiff presented evidence to support the notion that LPC engaged in deception in connection with the warranty claim process, any such claim would be individual in nature and could not be pursued pursuant to GBL § 349.

### III.    Plaintiff's Breach of Express Warranty Claim

LPC argues that it is entitled to summary judgment on Plaintiff's breach of express warranty claim because (1) Plaintiff seeks damages that are more than twice the original purchase price of the TrimBoard, and (2) LPC complied with its obligations under the warranty. (Dkt. 77-9 at 18-26).

"To prevail on a claim of breach of express warranty, a plaintiff must show an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon." *Factory Assocs. & Exps., Inc., v. Lehigh Safety Shoes Co.*, 382 F. App'x 110, 111-12 (2d Cir. 2010) (internal quotations and citation omitted); *see also Reed v. Pfizer*, 839 F. Supp. 2d 571, 578 (E.D.N.Y. 2012) (claim for breach of an express warranty requires that an express warranty existed, was breached, and that the plaintiff relied on the warranty). Plaintiff also must prove that the product was being used for the purpose and in the manner intended. *Henry v. Rehab Plus, Inc.*, 404 F. Supp. 2d 435, 444 (E.D.N.Y. 2005). "The express warranty is as much a part of the contract as any other term. Once the express warranty is shown to have been relied on as part of the contract, the right to be indemnified in damages for its breach does not depend on proof that the buyer thereafter believed that the assurances of fact made in the warranty would be fulfilled. The right to indemnification depends only on establishing that the warranty was breached." *CBS Inc. v. Ziff-Davis Pub. Co.*, 75 N.Y.2d 496, 503-04 (1990). Notably, "New York Courts recognize that privity of contract is not required to state a claim of breach of [express] warranties contained in public advertising or sales literature." *Util. Metal Research, Inc.*

*v. Generic Power Sys., Inc.*, No. 02-CV-6205 (FB) (RML), 2004 U.S. Dist. LEXIS 23314, at *14 (E.D.N.Y. Nov. 18, 2004).

### A. LPC's Compliance With Its Obligations Under the Warranty

Plaintiff argues that LPC failed to fulfill its obligations under the warranty because it did not offer as reimbursement the full value of the TrimBoard installed on the Bristol Village facility. (Dkt. 97 at 26). "[A] breach of express warranty claim in New York requires a showing that Defendant actually breached its obligations under the warranty." *Warren W. Fane, Inc. v. Tri-State Diesel, Inc.*, 83 U.C.C. Rep. Serv. 2d (Callaghan) 574, 2014 U.S. Dist. LEXIS 62824, at *27 (N.D.N.Y. 2014) (citing *Pomuto v. Waste Mgmt., Inc.*, 44 F. Supp. 2d 628, 642 (S.D.N.Y. 1999)). The TrimBoard warranty provides, in relevant part:

> Louisiana-Pacific Corporation (LP) warrants its TrimBoard . . . *for a period of ten years from the date of installation under normal conditions of use and exposure, providing the trim is properly stored, installed, maintained, and protected as specified in LP's Application Instructions.* Should the product fail within ten years of the date of installation . . . *LP will compensate the owner for repair and replacement of the affected trim no more than twice the original purchase price of the affected trim if failure occurs within ten years.*

(Dkt. 77-7 at 71) (emphasis added).

In support of its claim that it complied with the applicable warranty, LPC submits the affidavit of Vernon Tilley, a warranty claims analyst employed by LPC. (Dkt. 77-6). Mr. Tilley explains that Plaintiff filed a warranty claim in April 2011, after which Randall Macemore, a warranty claims analyst, conducted a comprehensive inspection of Bristol's property. (*Id.* at ¶¶ 5-6). During the course of his inspection, Mr. Macemore

- 18 -

took photographs of the buildings and made notes of his observations. (*Id.* at ¶ 7). Mr. Macemore's field notes reflect that portions of the TrimBoard had not been installed in accordance with the installation instructions and thus were not compensable under the warranty, which conditioned repair and replacement on correct installation and maintenance.[4] (*Id.* at ¶ 9). Approximately 2,936 linear feet of the originally-installed TrimBoard was determined to be covered by the warranty. (Dkt. 77-7 at 69, 76). Following his visit, Mr. Macemore prepared a written offer compensating Plaintiff for twice the purchase price of all damages to the TrimBoard deemed compensable. (Dkt. 77-6 at ¶ 10). The total figure was $7,200.84. (*Id.*). Plaintiff declined LPC's offer. (Dkt. 77-7 at 80).

Mr. Macemore's field inspection notes are attached to Mr. Tilley's affidavit as Exhibit B. (Dkt. 77-7 at 30-36). The notes are comprised of one column titled "photograph," under which a photo of any damaged TrimBoard appears, and another

---

[4]     The TrimBoard installation instructions provide that TrimBoard should be caulked and painted, siding and trim should be installed no closer than six inches to the ground, roof drainage should be directed away from the home to prevent pooling, and the trim should not be installed in direct contact with masonry. (Dkt. 98-8 at 5-7). The instructions also note that most complaints result from the failure to follow application instructions, or a lack of care or maintenance of the TrimBoard, and that failure to follow application instructions can cause algae, mold, or mildew on the trim surface. (*Id.* at 6). Further, the instructions note that yearly inspections of the trim should be performed in order to keep the trim functioning properly. (*Id.*). Finally, the installation instructions also contain the statement, "FAILURE TO FOLLOW COMPLETE APPLICATION AND CARE AND MAINTENANCE REQUIREMENTS MAY VOID WARRANTY." (*Id.*). The TrimBoard care and maintenance instructions, attached as Exhibit E to Mr. Tilley's affidavit, also provide that failure to follow maintenance procedures could void the warranty. (Dkt. 77-7 at 72). Proper maintenance includes washing and refinishing with paint. (*Id.*).

column titled "comment," under which there is an explanation as to whether the specific portion of the pictured TrimBoard is compensable or non-compensable. (*Id.*). Mr. Macemore examined 13 sections of damaged TrimBoard. (Dkt. 77-7 at 30-36). Of those 13 sections, it appears that 11 were identified as non-compensable due to construction and maintenance errors, including: insufficient ground clearance; trim in contact with masonry; moisture ledge caused by trim being installed flat; no gap or caulk between the trim pieces; damages caused by roof-water runoff; and insufficient paint. (*Id.*).

A seller may limit a warranty to those portions of its product that are properly installed and maintained. *See Flame Cut Steel Prods. Co. v. Performance Foams & Coatings, Inc.*, 46 F. Supp. 2d 222, 226 (E.D.N.Y. 1999) (upholding warranty on roof coating product and stating that "Premium may refuse to issue a warranty if its installation instructions are not followed or if it has not been paid.").

Plaintiff focuses much of its argument that LPC breached an express warranty on the contention that TrimBoard is inherently defective, and thus Plaintiff is entitled to be compensated for the entirety of the damage caused by the defective product. (*See* Dkt. 97 at 26 ("TrimBoard is inherently defective and does not perform satisfactorily, when installed and maintained in accordance with the installation instructions."); *id.* at 27 (LP failed to perform its obligations under the warranty, as "TrimBoard is inherently defective and swells when exposed to liquid water.")). Plaintiff's argument in this respect, while relevant to a breach of an implied warranty of merchantability claim, is not relevant to its breach of express warranty claim. Plaintiff previously argued its breach of implied warranty of merchantability claim before Judge Skretny, and it was dismissed

because Plaintiff's complaint did not sufficiently allege privity of contract, and on statute of limitations grounds.  (Dkt. 37 at 7-8, 21).  Plaintiff may not attempt to revive this claim before a different Judge.  Indeed, the express warranty specifically disclaimed any implied warranty of merchantability.  (*See* Dkt. 77-7 at 71 ("THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTIBILITY AND FITNESS FOR A PARTICULAR PURPOSE.")).  With this consideration in mind, the Court assesses Plaintiff's breach of express warranty claim.

Defendant contends that it properly disclaimed certain portions of the TrimBoard because those portions were incorrectly installed, as it was entitled to do under the warranty.  (Dkt. 77-9 at 25).  In response, Plaintiff argues that the installation instructions upon which LPC relies are misleading and incomplete (Dkt. 97 at 27), and submits two expert reports assessing the performance of the TrimBoard and the adequacy of the installation instructions.  (Dkt. 98-5 & 98-6).  The report submitted by Stephen Smulski, Ph.D. ("the report"), is particularly instructive on the issue of the installation instructions.  (Dkt. 98-6 at 8).

Dr. Smulski's report concludes that the installation instructions "are misleading, incomplete and in one instance, contrary to good construction practice."  (*Id*. at 17).  Dr. Smulski's report chiefly focuses on the instructions relating to what must be done with the TrimBoard edges, which are particularly susceptible to absorbing water.  For example, the report states that an illustration depicting how to install flashing is "incorrect," and that the instructions do not indicate whether the bottom ends of corner

- 21 -

trim should be caulked. (*Id.* at 11).  The report also notes that the installation instructions state that TrimBoard can be used "wherever wood trim is normally used," but that this statement is contrary to LPC's instruction that TrimBoard be installed "no closer than 6 inches from the ground." (*Id.* at 10).  Further, the report states that the installation instructions are silent on what should be done to TrimBoard's factory and site cut ends, which are most vulnerable to wetting by liquid water. (*Id.* at 12).  Additionally, the report states that the TrimBoard installation instructions are confusing by references to TrimBoard "ends" and "edges," and the instructions do not explicitly direct installers to apply a coating to the ends of the TrimBoard. (*Id.* at 14-16).  In its reply, Defendant does not dispute or otherwise challenge this evidence.

The Court asked defense counsel at oral argument on March 12, 2015, its view on whether the expert reports created an issue of fact with regard to whether Plaintiff could have successfully complied with the TrimBoard installation instructions.  Defense counsel responded that any of the alleged ambiguities in the installation instructions, as discussed in the expert reports, are irrelevant because the TrimBoard disclaimed under the warranty was disclaimed for installation errors not discussed in the report.  In other words, according to Defendant, the only TrimBoard that was disclaimed under the warranty was installed incorrectly despite the fact that the installation instructions were clear.

However, a close examination of the record before the Court reveals that this is not the case.  LPC submits copies of its inspection records from Bristol's property as Exhibits B and C to Mr. Tilly's affidavit (Dkt. 77-6 at 30).  As previously explained,

- 22 -

Exhibit B is a worksheet titled "LP Trim Inspection Photographs," and is comprised of 13 photographs of deteriorating TrimBoard at the Bristol Village property. The photographs are accompanied by comments, indicating the reason for the deterioration and whether the damages are compensable or non-compensable. (*Id.* at 30-36). The incorrect installation reasons listed on the worksheet include "insufficient ground clearance," "trim in contact with masonry," "trim installation flat," "roofwater runoff," "failure to include caulk between the trim pieces," and "insufficient paint." (*Id.*). The worksheet indicates that the TrimBoard damaged for these reasons was determined to be not compensable under the warranty.

Exhibit C is titled "Trim Inspection Worksheet," and is comprised of the inspector's field notes from inspection of the Bristol Village property. (Dkt. 77-7 at 28). The Trim Inspection Worksheet reveals that some of the damages were caused by the "miter cut," and the fact that the TrimBoard was "not flashed." The worksheet is unclear as to which portions of the TrimBoard were determined to be compensable; however, the worksheet clearly indicates that damage was caused to the TrimBoard for installation errors, the instructions for which the expert report identified as ambiguous and incorrect.

At this time, there is insufficient evidence before the Court that would warrant granting LPC summary judgment on Plaintiff's breach of express warranty claim. As the moving party, LPC has the burden to present evidence indicating that it is entitled to summary judgment on the claims against it. *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004). Plaintiff has presented evidence that it could not have complied with the TrimBoard installation instructions because they are confusing and

misleading, and LPC has failed to effectively counter this evidence. Based on the record before it, the Court is unable to conclude that LPC is entitled to summary judgment on Plaintiff's breach of express warranty claim.

**B.    Enforceability of the Damages Limitations in the Warranty**

Separate and apart from the issue of whether LPC properly disclaimed certain portions of the TrimBoard is whether the warranty's damages limitations are enforceable. Plaintiff argues that it is not limited to the warranty's remedy of twice the purchase price, because (1) it was not disclosed at or before the time of sale, could not have formed the basis for the bargain, and is ineffective; (2) it is unconscionable and therefore unenforceable; and (3) it fails of its essential purpose, such that Plaintiff is entitled to all remedies arising from breach of the express warranty, precluding summary judgment. (Dkt. 97 at 18-26).

**1.    Plaintiff's Knowledge of the Warranty**

Plaintiff argues that it is not constrained by the limitations of remedies specified in the TrimBoard warranty because it was not disclosed at or before the time of sale and could not have formed the basis for the bargain.  (Dkt. 97 at 19).  Plaintiff relies on Mr. Helbringer's testimony that he "[did] not recall" seeing a copy of the manufacturer's warranty at the time of construction.  (*Id.* at 20).  Plaintiff argues that because LPC has not offered any evidence that it timely disclosed the warranty limitation, it cannot obtain summary judgment on its breach of warranty claim.  Defendant argues that as a third-party beneficiary, Plaintiff lacks standing to challenge the remedy provision on this basis. (Dkt. 106 at 12).

LPC has submitted evidence of the warranty applicable to the TrimBoard product. (Dkt. 77-6 at ¶ 11 & Ex. E).   Although Plaintiff disputes that the provisions of the warranty were "clear", it admits in response to LPC's statement of undisputed facts that the warranty cited by LPC is, in fact, the warranty at issue in this action.   (Dkt. 77-1 at ¶¶ 16-17; Dkt. 99 at ¶¶ 16-17).   Indeed, Plaintiff bases its breach of express warranty cause of action on the ten-year warranty that was purportedly "relied upon by Plaintiff . . . in purchasing the product or in accepting structures in which Trimboard had been installed by others."   (Dkt. 24 at ¶ 86).   Plaintiff alleges that it relied upon the "existence of Defendant's ten-year warranty" (*id.* at ¶ 88), and that this became "the basis of the bargain" between Plaintiff and Defendant (*id.* at ¶ 89).   Plaintiff's argument that it is not bound by the express provisions of the very warranty that it seeks to rely upon in a breach of warranty claim is logically flawed.

Under New York law, a third-party beneficiary to a contract has the same rights as the contracting parties.   *Am. Elec. Power Co v. Westinghouse Elec. Corp.*, 418 F. Supp. 435, 449-50 (S.D.N.Y. 1976); *see also Ball Banking Corp. v. UPG, Inc.*, 985 F.2d 685, 697 (2d Cir. 1993).   However, a third-party beneficiary possesses "no greater right to enforce a contract than the actual parties to the contract."   *BAII Banking Corp. v. UPG, Inc.*, 985 F.2d 685, 697 (2d Cir. 1993).   Thus, although a third-party beneficiary is entitled to the rights possessed by the contracting parties, it cannot simultaneously challenge the limited remedy provisions of the warranty based on a theory that it did not have notice of the provisions.   *See Am. Elec. Power Co.*, 418 F. Supp. at 449-50 ("It would be inconsistent . . . for the non-signatory plaintiffs to assert vigorously that they

are parties to the . . . contract by virtue of agency or third party beneficiary doctrine, while at the same time contending that they are not bound by the limited remedies for breach incorporated in the precise terms of the agreement."). *See also* N.Y. U.C.C. § 2-318; *Harbison v. Louisiana-Pacific Co.*, No. 13cv0814, 2014 U.S. Dist. LEXIS 14993, at *25 (W.D. Pa. Feb. 6, 2014) ("On the one hand, Plaintiff wants to avail [it]self of the express warranty, but then have this Court declare the relief accorded to him in that same warranty unconscionable so that he may seek unlimited damages. The Court declines to do so."). In other words, Plaintiff cannot "seek to have [its] cake and eat it too" by relying on the warranty to assert a claim while, at the same time, seeking to avoid the plain language of that warranty by contending that it lacked notice. *Upstate Shredding, LLC v. Carloss Well Supply Co.*, 84 F. Supp. 2d 357, 363 (N.D.N.Y. 2000) ("Plaintiffs seek to have their cake and eat it too; they claim reliance on the Express Warranty to establish a claim for breach of the express warranty and, at the same time, disclaim reliance on that same warranty to avoid arbitration.").

The Court previously ruled that Plaintiff is a third-party beneficiary to the contract. (Dkt. 37; *see also* Dkt. 106 at 13 n.12). This determination is law of the case. As a third-party beneficiary of the contract, Plaintiff is bound by its limitations, regardless of whether Plaintiff had actual notice of the warranty provision. *See Cappello v. Union Carbide & Carbon Corp.*, 103 N.Y.S.2d 157, 162 (N.Y. Sup. Ct., Niagara Cnty. 1951) ("In actions by a third-party beneficiary, it is unnecessary that . . . he be aware of the contract when made. . . .); *see also Ellis v. Louisiana-Pacific Corp.*, 699 F.3d 778, 785-86 (4th Cir. 2012) (rejecting the plaintiff-appellant's argument that because it never

saw the express warranty for TrimBoard, it could escape the warranty's terms and operation of the economic loss rule to bar tort-based claims).

Plaintiff cites several cases, purportedly standing for the proposition that provisions of a warranty cannot be enforced against a third-party beneficiary who lacks notice. *See First Sec. Mortgage Co. v. Goldmark Plastics Compounds, Inc.*, 862 F. Supp. 918 (E.D.N.Y. 1994); *Basic Adhesives, Inc. v. Robert Matzkin Co.*, 101 Misc.2d 283 (N.Y.C. Civ. Ct. 1979); *Maltz v. Union Carbide Chems. & Plastics Co.*, 992 F. Supp. 286 (S.D.N.Y. 1998); and *Oddo v. Gen. Motors Corp.*, 22 UCC Rep. Serv. 1147 (N.Y. Sup. Ct., N.Y. Cnty. 1977). The cases cited by Plaintiff in support of this argument are inapposite, as they do not involve a third-party beneficiary. At best, they simply stand for the unremarkable proposition that when two parties contract directly, efforts to change the terms of the contract or disclaim a warranty will not be binding if there is no proof that the other party actually was aware of the changes or limitations. *See Harbison*, 2014 U.S. Dist. LEXIS 14993, at *10-13 (rejecting argument that the defendant was not bound by terms of express warranty because the plaintiff was not aware of specific terms of express warranty, where plaintiff's builder was aware of warranty provisions). Accordingly, Plaintiff cannot at the same time rely upon the express warranty to pursue its claim against LPC, and then seek to avoid the warranty's limitations by contending that it was unaware of the specific terms.

### 2.    Unconscionability – Incidental/Consequential Damages

New York law is well-settled that "[c]ontractual exculpatory and limitations of liability clauses are enforceable." *David Gutter Furs v. Jewelers Protection Svcs.*, 79

- 27 -

N.Y.2d 1027, at *2 (1992); *see also* N.Y. U.C.C. § 2-316(4) (providing that remedies for a breach of warranty may be limited in accordance with the provisions of the Uniform Commercial Code); *see also Xerox Corp. v. Graphic Mgmt. Svcs.*, 959 F. Supp. 2d 311, 320 (W.D.N.Y. 2013) (defendants were foreclosed from claiming breach of an implied warranty of fitness for a particular purpose, where it was specifically disclaimed in the contract); *Warren W. Fane, Inc.*, 2014 U.S. Dist. LEXIS 62824, at *23-24 (because warranty specifically disclaimed any incidental damages, the plaintiff could not recover on any breach of warranty claim).

"Under New York law . . . a sales contract limiting the buyer's remedy to repair or replacement and excluding the recovery of consequential damages is subject to a two-part analysis to determine (1) whether the limited remedy failed in its essential purpose, and (2) whether the exclusion of consequential damages was unconscionable." *Roneker v. Kenworth Truck Co.*, 944 F. Supp. 179, 184 (W.D.N.Y. 1996). Exclusive remedy provisions are governed by subparagraph 2 of section 2-719 of New York's Uniform Commercial Code, whereas exclusions of incidental or consequential damages[5] are governed by subparagraph 3. *McNally Wellman Co. v. N.Y.S. Elec. & Gas Corp.*, 63 F.3d 1188, 1197 (2d Cir. 1995). "[I]t is well established that the failure of a limited remedy

---

[5]     Incidental damages are defined under New York's Uniform Commercial Code as including "expenses reasonably incurred in inspection, receipt, transportation, and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach." N.Y. U.C.C. § 2-715(1). Consequential damages are defined to include "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise" and "injury to person or property proximately resulting from any breach of warranty." N.Y. U.C.C. § 2-715(2).

does not render ineffective all other limitations of liability.   Rather, a limitation on incidental or consequential damages remains valid even if an exclusive remedy fails." *Id.*; *see also Scott v. Palermo*, 233 A.D.2d 869, 869-70 (4th Dep't 1996).   "The purposes of the two clauses are totally discrete: that of the first is to restrict defendant's obligations under the transaction to repairing or replacing defective parts, while that of the second is to rule out a specific type of damage.   Each clause stands on its own and may be given effect without regard to the other." *Cayuga Harvester, Inc. v. Allis-Chalmers Corp.*, 95 A.D.2d 5, 14 (4th Dep't 1983).   Accordingly, the "failure of one method of limiting liability does not render the other limitation ineffective." *Freidman v. GMC*, No. 08 Civ. 2458 (SAS), 2009 U.S. Dist. LEXIS 45384, at *6 (S.D.N.Y. May 29, 2009) (internal quotations and citation omitted).   In other words, even "[a]ssuming *arguendo* that [Bristol] is correct in its contention that the limitation of remedy fails its essential purpose, [Bristol] still cannot recover . . . consequential damages . . . unless it can also defeat the separate limitation of consequential damages clause contained in the contract." *Am. Tel. & Tel. Co. v. N.Y.C. Human Res. Admin.*, 833 F. Supp. 962, 987 (S.D.N.Y. 1993).

Whether a warranty is unconscionable is a question of law for the Court to decide. *Tokio Marine v. Macready*, 803 F. Supp. 2d 193, 204 n.3 (E.D.N.Y. 2011).   A showing of unconscionability requires "some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *McNally Wellman Co..*, 63 F.3d at 1197 (internal quotations and citations omitted).   "Transactions deemed unconscionable are often typified by either disparity in

bargaining power, an atmosphere or haste and pressure, [or a] lack of understanding by one of the parties. . . . Another court has characterized an unconscionable contract as one that is . . . grossly unreasonable . . . in light of the mores and business practices of the time and place." *Kraft v. Staten Island Boat Sales, Inc.*, 715 F. Supp. 2d 464, 477 (S.D.N.Y. 2010) (internal quotations and citations omitted) (alteration in original). "'[T]here is a presumption of conscionability when the contract is between businessmen in a commercial setting.'" *Xerox Corp. v. Graphic Mgmt. Servs. Inc.*, 959 F. Supp. 2d 311, 320 (W.D.N.Y. 2013) (internal quotations and citations omitted) (alteration in original).

Here, summary judgment is warranted in favor of LPC with respect to Plaintiff's efforts to strike the limitation of damages provision as unconscionable. Plaintiff has not presented any evidence that it was not afforded any meaningful choice when selecting the TrimBoard product. In fact, it is undisputed that Plaintiff considered alternatives before selecting the TrimBoard product (Dkt. 77-1 at ¶ 9; Dkt. 99 at ¶ 9), and testimony by Mr. Helbringer reveals that Plaintiff considered options to TrimBoard for the external trim, including siding and vinyl (Dkt. 77-5, Ex. 6 at 27:1-15; 40:19-41:4). Further, Plaintiff has not presented any evidence indicating that it was in an unfair bargaining position. As a result, on the record before it, the Court concludes that there is no issue of material fact – the warranty was not unconscionable.

Indeed, courts examining LPC's warranty limitation, which is identical to the one at issue, have concluded that it is not unconscionable. *See Hart v. Louisiana-Pacific Corp.*, No. 13-2375, 2016 WL 908878, at *9 (4th Cir. Mar. 10, 2016) (limited remedy

provision not unconscionable); *Harbison v. Louisiana-Pacific Corp.*, 602 F. App'x 884, 886-88 (3d Cir. 2015) (damages limitation in LPC's warranty clause not unconscionable); *Holbrook v. Louisiana-Pacific Corp.*, No. 3:12CV484, 2015 U.S. Dist. LEXIS 35862, at *12-14 (N.D. Ohio Mar. 23, 2015) (warranty not unconscionable); *Brown v. Louisiana-Pacific Corp.*, 4:12-cv-00102 (S.D. Iowa Sept. 18, 2014) (warranty not unconscionable) (unpublished decision).

Before its decision was affirmed by the Third Circuit, the Western District of Pennsylvania twice addressed the unconscionability issue in the *Harbison* case, and concluded that the warranty provision is not unconscionable. *See Harbison v. Louisiana-Pacific Corp.*, No. 13cv0814, 2014 U.S. Dist. LEXIS 37573, at *11-14 (W.D. Pa. Mar. 20, 2014) (only issue was whether LPC breached the express warranty by not offering to pay the plaintiff two times the value of the defective TrimBoard, not whether the warranty was unconscionable); *Harbison*, 2014 U.S. Dist. LEXIS 14993, at *24 ("Defendant's combined knowledge about the product and its limitation of liability language in the express warranty does not render the language of the express warranty 'unconscionable.'").

As a result, the warranty's limitations on the ability of Plaintiff to recover incidental or consequential damages is enforceable, and Plaintiff may not recover those damages from LPC.

### 3.   Failure of Essential Purpose – Limited Remedy of Twice Original Purchase Price

In addition to limiting the recovery of incidental and consequential damages, the warranty expressly limits the ability to recover "for repair and replacement of the affected trim no more than twice the original purchase price of the affected trim. . . ." (Dkt. 77-7 at 71).

Pursuant to section 2-719 of New York's Uniform Commercial Code, "the agreement may provide for remedies . . . in substitution for those provided in this Article and may limit or alter the measure of damages recoverable under this Article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts. . . ." N.Y. U.C.C. § 2-719(1)(a).  In other words, "[p]arties to a contract may limit the available remedies and, generally, limitation of liability clauses are enforced 'unless the specified remedy fails of its essential purpose.'" *Xerox Corp.*, 959 F. Supp. 2d at 320 (quoting *Maltz v. Union Carbide Chems. & Plastics Co.*, 992 F. Supp. 286, 304 (S.D.N.Y. 1998)).  *See* N.Y. U.C.C. § 2-719(2) ("Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act.").

"A remedy fails of its essential purpose if the circumstances existing at the time of the agreement have changed so that enforcement of the limited remedy would essentially leave plaintiff with no remedy at all." *Xerox Corp.*, 959 F. Supp. 2d at 320 (internal quotations and citation omitted); *see also Roneker*, 944 F. Supp. at 184 ("A remedy fails in its essential purpose when, while it may have appeared fair and reasonable at the

inception of the contract, as a result of later circumstances it operates to deprive a party of a substantial benefit of the bargain."); *Am. Tel. & Tel. Co.*, 833 F. Supp. at 986 ("'it is of the very essence of a sales contract that at least minimum adequate remedies be available' that preserve for a party 'at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract.'") (quoting N.Y. U.C.C. § 2-719, Official Comment 1).

For example, "[a] seller's inability to effect a successful repair or replacement after numerous attempts may demonstrate such a failure of the restricted remedy's essential purpose." *Waverly Props. v. KMG Waverly, LLC*, 824 F. Supp. 2d 547, 558 (S.D.N.Y. 2011), *adopted*, 824 F. Supp. 2d 547 (S.D.N.Y. 2011); *see Castillo v. GM, LLC*, 500 B.R. 333, 341 (S.D.N.Y. 2013) ("A failure to repair transmission defects identified within the warranty period may demonstrate that the remedy provided by the warranty failed of its essential purpose."), *aff'd*, 578 F. App'x 43 (2d Cir. 2014). Also, "a 'delay in supplying the remedy can just as effectively deny the purchaser the product he expected as can the total inability to repair. In both instances, the buyer loses the substantial benefit of his purchase.'" *Cayuga Harvester, Inc.*, 95 A.D.2d at 11 (internal quotations and citation omitted).

Proof is not required that the "warrantor's conduct in failing to effect repairs was willfully dilatory or even negligent. Rather, the section is to apply 'whenever an exclusive remedy, which may have appeared fair and reasonable at the inception of the contract, as a result of later circumstances operates to deprive a party of a substantial benefit of the bargain.'" *Id.* (citation omitted).

"[W]hether the limited warranty failed in its essential purpose is a question of fact for the jury to determine based on circumstances transpiring after the contract was formed." *Kraft*, 715 F. Supp. 2d at 476; *see also Besicorp Grp. v. Thermo Electron Corp.*, No. 90-CV-434, 1993 U.S. Dist. LEXIS 4315, at *18 (N.D.N.Y. Apr. 6, 1993) (Because whether a remedy fails of its essential purpose is a question of fact, "courts usually have assumed at the summary judgment level that the remedy of repair or replacement has failed, and have gone on to consider whether a consequential damages exclusion remains independently enforceable."). However, "Courts have found that where the contract provides for either the option of replacement of the goods or the contract price, and where the non-breaching party has not alleged that the limited remedy provision would 'effectively deprive them of a remedy,' the limitation of liability clause does not fail of its essential purpose." *Xerox Corp.*, 959 F. Supp. 2d at 320.

Here, Plaintiff cites to LPC's failure to offer compensation in the form of twice the purchase price for all of the defective TrimBoard, and its reliance upon allegedly faulty installation to disclaim responsibility for much of the damaged TrimBoard, as evidence that the limited remedy provision has failed of its essential purpose. (Dkt. 97 at 24-26). Based on the record before it, the Court cannot conclude that there is no issue of material fact on this issue. This is not a situation where LPC has offered to replace the goods (indeed, an offer to replace the defective goods with further defective goods would not constitute an adequate remedy). Nor is this a situation where LPC has offered to reimburse Plaintiff the full contract price for the goods. Rather, LPC has simply offered

- 34 -

$7,200.84 (Dkt. 77-7 at 74), representing twice the purchase price for some of the TrimBoard, but not all of the TrimBoard that has deteriorated.

When a limitation of remedy fails of its essential purpose, "the limitation is nullified and the aggrieved party may seek any remedy otherwise available under the U.C.C." *Piper Acceptance Corp. v. Barton*, No. 83 Civ. 4998-CSH, 1987 U.S. Dist. LEXIS 175, at *6 (S.D.N.Y. Jan. 14, 1987). *See* N.Y. U.C.C. § 2-714(2) (allowing recovery measured by "the difference at the time and place of acceptance between the values of the goods accepted and the value they would have had if they had been as warranted. . . ."); *see also Cayuga Harvester, Inc.*, 95 A.D.2d at 12 (the usual measure of damages in warranty cases is "'the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted.'") (citation omitted).

Here, while the limitation of consequential and incidental damages contained in the warranty is enforceable by LPC, the Court finds that there are disputed issues of material fact as to whether the limited remedy provision fails of its essential purpose, and therefore, summary judgment on that issue is denied. *See Holbrook*, 2015 U.S. Dist. LEXIS 35862, at *15-19 (while limitations in warranty were not unconscionable, there was a question of fact as to whether limited remedy of twice the purchase price failed of its essential purpose).

## IV. Bristol's Class Claims

LPC argues that Plaintiff's class claims fail because it has no substantive causes of action. (Dkt. 77-9 at 26). Plaintiff argues that because it has established a controversy, it

is entitled to pursue relief on behalf of the class. (Dkt. 97 at 28). The parties do not offer any further argument as to why Plaintiff should not be able to pursue claims on behalf of the class.

Accordingly, the Court denies without prejudice LPC's summary judgment motion as it pertains to Plaintiff's breach of warranty claim brought on behalf of the class. As noted above, the class has not been formally certified pursuant to Fed. R. Civ. P. 23. The Court re-refers this matter to the Magistrate Judge for non-dispositive issues, including for the purpose of ascertaining whether a further scheduling order needs to be entered with respect to the class certification issues.

## CONCLUSION

For the foregoing reasons, LPC's motion for summary judgment is granted in part and denied in part.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: March 21, 2016
       Rochester, New York